## Board of Trustees of Eastern State Penitentiary v. Gordon, Secretary of Banking.

*Harold D. Saylor*, Deputy Attorney General, and *Frank R. Donahue*, for petitioners.

*Joseph K. Willing*, for defendant.

LAMBERTON, J., November 24, 1931.—This is a petition by the Board of Trustees of Eastern State Penitentiary for a declaratory judgment, declaring whether said board of trustees is entitled to have a preferred status as a depositor of the Aldine Trust Company. The facts were all stipulated.

On December 27, 1930, the Aldine Trust Company, engaged in the conduct of a banking business in the City of Philadelphia, was taken in possession by the Secretary of Banking of the Commonwealth of Pennsylvania under the provisions of the Act of Assembly of June 18, 1923, P. L. 809, as amended. At said time there was on deposit in said Aldine Trust Company in the name of said board of trustees the aggregate sum of $33,408.27, divided as follows:

1. Eastern State Penitentiary Welfare Fund for Prisoners, C. M. Kratz, Trustee....................... $11,602.38
2. Eastern State Penitentiary Prisoners Fund........ ... 11,805.89
3. Eastern State Penitentiary Prisoners Fund, Certificate of Deposit..................................... 10,000.00

Total............................... $33,408.27

The first item, namely, the welfare fund for prisoners, was built up by contributions made by prisoners, by interest on deposits, and by other sources, and was used by the trustees for educational, recreational and welfare work in a field not provided for by state appropriation.

The second and third items are identical, except that the one is the balance in an active checking account, and the other is a certificate of deposit. These funds were built up by contributions of prisoners from earnings for labor done in the penitentiary, as well as from other sources, which were turned over to the board of trustees for safekeeping. While the accounts were lumped on deposit in the bank, they in reality represented the moneys of many prisoners, and separate accounts were kept by the trustees showing the funds deposited by each prisoner.

It is contended that these deposits are in reality funds of the Commonwealth, and are entitled to a preferred status upon the authority of the

decision of our Supreme Court in South Philadelphia State Bank's Insolvency, 295 Pa. 433.

The petition declares that it is highly desirable for the Board of Trustees of the Eastern State Penitentiary, as well as for the Secretary of Banking, that the question of the right of priority or preferential status be promptly determined. But in spite of the fact that counsel for the Secretary of Banking and counsel for the board of trustees have been equally insistent that they wished this point settled at this time, we deem it inadvisable to take jurisdiction.

The Act of February 17, 1906, P. L. 45, requires every banking institution receiving deposits of state funds to furnish ample security against loss to the Commonwealth, and we are informed by counsel for both parties that such security was given in the case of the Aldine Trust Company. In the case of South Philadelphia State Bank's Insolvency, *supra*, there was a Commonwealth deposit secured by a bond. The surety company, upon insolvency of the bank, paid to the Commonwealth the sum of $10,000 under said bond, and then presented a claim as a preferred creditor, contending that it was subrogated in all respects to the rights of the Commonwealth. The Supreme Court held that the surety company was subrogated to the rights of the Commonwealth as a depositor, but that it did not secure the preferential status which the·Commonwealth would have had. The court said: "Since the right of priority of the sovereign state exists pro bono populo, it follows that where a situation arises in which the State, having been paid in full, is not immediately concerned, and where the transfer of its right of priority would result in prejudice to one class of its citizens for the benefit of another, it cannot be held that the good of all the people would thus be served. It may well be assumed that the ordinary depositor in a bank which enjoys state deposits, knowing that, in event of the insolvency of the institution, the State has the right to priority of payment, would likewise know that the laws of Pennsylvania require all state deposits to be secured by bonds with ample security thereon. Furthermore, since the doctrine of subrogation is an equitable one, the ordinary depositor might properly believe that, in event of the insolvency of their depository, if no necessity existed for the State to protect itself by exercising its sovereign right to priority of payment, that right would not be used to his prejudice, and, on such basis, he would make, or continue, his deposits; therefore, the doctrine in question should not be allowed to operate in a manner to produce prejudicial results to such depositors."

The language of the Supreme Court, above quoted, gives ample justification for the refusal of this court to take jurisdiction in the present controversy. The law provides ample and proper remedies for the parties. The Commonwealth may, in a separate action, assert its claim against the surety company. If the Commonwealth is successful in such claim, the money of the board of trustees would be recovered from the surety company, and the surety company would be subrogated to the rights of the board of trustees as an ordinary depositor, but not as a preferred creditor. On the other hand, should the Commonwealth fail in such action against the surety company, the board of trustees can still assert its claim to a preference in the manner provided by the Act of June 15, 1923, P. L. 809. Under section forty-five of said act, the Secretary of Banking is required to file his account and to give written notice thereof ·to all depositors and other creditors. Said depositors and other creditors may then file objections within thirty days. This will give the board of trustees and the Commonwealth a proper and fit time and place in which to assert their claim to a preference, and have the same passed upon

by the courts if need be.  If we should now decide that the board of trustees is entitled to a preference, the effect of such decision might be to relieve the surety company of liability, and this would be done at the expense of other depositors, whose distributive share would thereby be proportionately reduced.

As we see it, this is neither the time nor the place for determination of the question raised.  The Act of 1923 provides the time and manner for the assertion of such claim, and proper diligence on the part of the counsel for the Commonwealth should be employed, so that the liability of the surety company may be first determined.  A premature decision could aid no one but the surety company, and might well prejudice other depositors.

That we are justified in declining to take jurisdiction is shown by the wording of the Declaratory Judgments Act of June 18, 1923, P. L. 840, which in section one gives to the courts the power of declaring the rights, etc., but does not impose upon the courts the obligation so to do.  This construction of the act is sustained by the decision of the Supreme Court in Kariher's Petition (No. 1.), 284 Pa. 455, in which Chief Justice Moschzisker said: "In all jurisdictions where declaratory judgment practice obtains, the rule is established that it is a matter of judicial discretion whether or not jurisdiction will be taken of any particular case."

We feel that in the present instance the taking of jurisdiction would be highly inadvisable.

And now, to wit, November 24, 1931, the petition of the Board of Trustees of Eastern State Penitentiary is dismissed without prejudice.